1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9                                                    **CASE NO. 1:16-CV-01027-AWI-EPG**

10    **JASON O'NEAL,**
                                                     **ORDER ON DEFENDANTS' MOTION
11                **Plaintiff**                       FOR SUMMARY JUDGMENT**

12            **v.**                                  (Doc. No. 13)

13

14    **COUNTY OF TULARE and SHERIFF
      MIKE BOUDREAUX,**

15

16                **Defendants**

17

18        In this case, Plaintiff Jason O'Neal ("O'Neal), a former Deputy, is suing the County of

19   Tulare and Sheriff Mike Boudreaux ("Sherriff Boudreaux") (collectively, "Defendants") after he

20   was terminated by the Tulare County Sheriff's Department ("Department").  The Department

21   terminated O'Neal on the basis that he had engaged in a personal relationship with a known drug

22   user and gang-associated inmate in violation of the Department's fraternization policy.  O'Neal

23   filed a complaint for violation of 42 U.S.C. § 1983, alleging that Defendants violated his

24   constitutional rights to privacy, free association, equal protection and due process.[1]  Defendants

25   have now moved for summary judgment on O'Neal's complaint. For the reasons that follow, the

26   Court will grant Defendants' motion.

27   _____

28   [1] O'Neal also originally filed a claim under the California Labor Code, but O'Neal subsequently dismissed the claim
     with prejudice.  See Doc. No. 18.

# **FACTUAL BACKGROUND**[2]

County of Tulare is a public entity governed by a Board of Supervisors. JSUMF 1. Mike Boudreaux was at all times referenced in the Complaint the Sheriff of County of Tulare, an elected position. JSUMF 2. O'Neal worked as a Deputy I for the Tulare County Sheriff's Department ("TCSD"), Detention Division. He was assigned to the Main Jail and was a member of the gang intelligence and tracking unit since 2009. JSUMF 3. County Personnel Rules, TCSD Policy Manual and Detention Division Procedures prohibit: personal or financial relationships between officers and inmates/former inmates/criminal offenders; personal use of County equipment; disclosure of confidential information; and improper handling of inmate mail. JSUMF 4.

The County became aware of a relationship between former inmate Ashley H. and O'Neal during the October 2014 de-briefing of "J.C," an inmate and gang member. JSUMF 5. On December 18, 2014, O'Neal was placed on administrative leave with pay. JSUMF 6. O'Neal was given notice of his right to representation and was questioned by Sgt. Duane Cornett on December 12, 2014 and December 31, 2014, regarding his conduct, specifically a relationship with inmate Ashley H. JSUMF 7. O'Neal was represented by counsel when questioned on December 12, 2014 and December 31, 2014. JSUMF 8. Ashley H. was interviewed on November 14, 2014 and confirmed O'Neal gave her money, visited her home and stayed in contact through telephone and text.

The matter was subsequently assigned to Internal Affairs ("IA") for a formal investigation. JSUMF 9. Following review of the investigation by four TCSD Captains and the Assistant Sheriff, the recommendation was for termination of O'Neal's employment. JSUMF 11. On March 20, 2015, O'Neal was served with Notice of Proposed Disciplinary Action: Dismissal, which outlined the grounds for discipline and advised O'Neal of his right to respond. O'Neal was provided with the materials relied on in the investigation five days later. JSUMF 12.

---

[2] "JSUMF" refers to the parties Joint Statement of Undisputed Facts. While the parties have submitted to the Court various separate disputed facts and evidentiary objections, the Court need not address these disputes because the facts which both parties agree are undisputed support the grant of summary judgment for Defendants. The Court therefore denies all evidentiary objections as moot.

O'Neal requested a pre-disciplinary hearing (*Skelly*) which was held on April 21, 2015. O'Neal was present with his attorney and both made statements. The *Skelly* hearing disposition supported termination. The Sheriff was briefed by the hearing officer, Undersheriff Robin Skiles. The Final Notice of Disciplinary Action: Dismissal was served on O'Neal on April 24, 2015. JSUMF 13. O'Neal did not deny the facts underlying the charges against him and conceded the information on which termination was based was accurate. He was familiar with policies regarding fraternization and admitted "making a mistake." O'Neal filed a timely Notice of Appeal of Disciplinary Action which he abandoned. JSUMF 16. All of the actions taken by Sheriff Boudreaux were solely in his official capacity as Sheriff of Tulare County. JSUMF 17.

O'Neal was terminated for violating policies and rules by: initiating and maintaining a relationship with a known drug user, criminal offender and gang affiliate; giving her money; doing her favors; intercepting, copying and disclosing her mail; improperly accessing inmate records; and meeting her at his home. JSUMF 19. Ashley H. and O'Neal were only "friends." They did not have a romantic or sexual relationship and did not have plans for a future together. JSUMF 21. O'Neal's claim for a violation of equal protection is based on allegations that he was not treated the same as other officers in retaliation for complaining about sworn jail employees in 2011. JSUMF 23. The only claim against Sheriff Boudreaux personally is that he approved termination of O'Neal. JSUMF 24. Sheriff Boudreaux relied on the IA investigative findings, O'Neal's response and the recommendations for dismissal from four Sheriffs Captains and the Assistant Sheriff in giving final approval for termination. JSUMF 25. TCSD did not utilize an objective, job disciplinary penalty matrix in determining appropriate disciplinary action. JSUMF 28. O'Neal was not criminally charged or prosecuted for any offense arising out of the facts of this case. JSUMF 29.

## **LEGAL STANDARD**

Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-

Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984.  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See

Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable.  See Narayan, 616 F.3d at 899.  Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015); see also Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1175 (9th Cir. 2003).  Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Fitzgerald v. El Dorado Cnty., 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.  Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

# DISCUSSION

## 1.  Section 1983 Claims

42 U.S.C. § 1983 imposes liability upon "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...."  A three-part analysis applies to adverse employment actions: (1) was the conduct at issue constitutionally

protected; (2) was it a substantial or motivating factor in the adverse employment action; and (3) would the government have taken the same action in the absence of the protected conduct. <u>Board of Co. Comm'rs. v. Umbehr</u>, 518 U.S. 668, 675-676 (1996); <u>Keyser v. Sacramento City Unified School Dist.</u>, 265 F.3d 741,751 (9th Cir. 2001).

### 2. *Whether O'Neal was Denied Due Process of Law*

#### a. **Procedural Due Process**

O'Neal argues that he has a property interest in his employment with the Department, because he was not an at-will employee. O'Neal asserts that he did not receive procedural due process from Defendants when they terminated his employment. Defendants assert that all proper procedures were followed for the termination and that O'Neal did in fact receive procedural due process.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." <u>Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.</u>, 149 F.3d 971, 982 (9th Cir. 1998). In reviewing the discharge of government employees with tenure, the U.S. Supreme Court held that that a constitutionally adequate pre-deprivation hearing consisted of three elements: (1) oral or written notice to the employee of the "charges" against him; (2) an explanation of the employer's evidence; and (3) an opportunity to respond, either in person or in writing. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985); <u>see also</u> <u>Brewster</u>, 149 F.3d at 986.

O'Neal was not denied procedural due process in this case. The parties do not dispute whether O'Neal had a protected property interest in his employment. Instead, the dispute centers on whether there was a denial of adequate procedural protections in O'Neal's termination. The undisputed facts show that O'Neal was terminated only after Defendants gave notice to O'Neal of his rights, and O'Neal was represented by an attorney throughout the investigation and hearing. Specifically, the Department questioned O'Neal about his conduct on December 12, 2014 and December 31, 2014, during which O'Neal was advised of his right to counsel, and had counsel present. Thereafter, IA conducted a formal investigation, which was reviewed by four TCSD

Captains and the Assistant Sheriff, who recommended termination of O'Neal's employment. On March 20, 2015, O'Neal was served with a notice which outlined the grounds for discipline and advised him of his right to respond. O'Neal was also given the materials relied on during the investigation shortly thereafter.

O'Neal requested and received a pre-disciplinary hearing, held on April 21, 2015. O'Neal was present with his attorney and both made statements. The Final Notice of Disciplinary Action: Dismissal was served on O'Neal on April 24, 2015. Notably, O'Neal did not deny the facts underlying the charges against him and conceded the information on which termination was based was accurate. He was familiar with policies regarding fraternization and admitted to "making a mistake."

These undisputed facts show that O'Neal received sufficient notice of the charges against him as well as the District's supporting evidence. O'Neal had the opportunity to respond, and did in fact do so along with his counsel, at a hearing. Therefore, the Court finds that as a matter of law, O'Neal cannot prevail on his allegation of violation of procedural due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see also Brewster, 149 F.3d at 986.

### b. Substantive Due Process

O'Neal also argues that his substantive due process rights were violated. O'Neal argues that his termination violated his constitutional right to freedom of association and his right to privacy.

To state a substantive due process claim, a plaintiff "must plead that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" Lebbos v. Judges of Superior Ct., 883 F.2d 810, 818 (9th Cir. 1989) (citation omitted); see County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) ("the touchstone of due process is protection of the individual against arbitrary action of government") (citation omitted). "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense," which occurs when government officials "abus[e] their power, or employ[ ] it as an instrument of oppression" to the extent that it "shocks the conscience." Id. at 846 (internal

citations and quotation marks omitted); <u>Corales v. Bennett</u>, 567 F.3d 554, 568 (9th Cir. 2009) ("Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty.'" (quoting <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 871 (9th Cir. 1998))) (internal quotations omitted).

Defendants' action in terminating O'Neal based on his admitted violation of Department policy is not arbitrary, nor does it "shock the conscience." Given O'Neal's position as a Deputy I for the Sherriff's Department and his membership in the gang intelligence and tracking unit, O'Neal was subject to very specific Department policies, which he was familiar with. O'Neal does not dispute that County Personnel Rules, TCSD Policy Manual and Detention Division Procedures prohibit: personal or financial relationships between officers and inmates/former inmates/criminal offenders; personal use of County equipment; disclosure of confidential information; and improper handling of inmate mail. Further, O'Neal admitted to "making a mistake," and did not deny the facts underlying the charges against him. In fact, O'Neal conceded that the information on which his termination was based was accurate.

Within this context, the Court finds that O'Neal's conduct was not constitutionally protected. <u>See</u> <u>Board of Co. Comm'rs.</u>, 518 U.S. at 675-676; <u>Keyser</u>, 265 F.3d at 751. Defendants' questioning of O'Neal regarding the personal nature of his relationship with Ashley H., a known drug user, criminal offender and gang affiliate, did not violate his right to privacy. Further, such questioning does not "shock the conscience" in this context. <u>See Corales</u>, 567 F.3d at 568. Additionally, Defendants' termination of O'Neal based on his association with Ashley H. did not violate O'Neal's right to freedom of association. Given O'Neal's position within law enforcement and specifically the gang intelligence and tracking unit, O'Neal knowingly subjected himself to explicit limitations on who he could associate with. The Court finds that it does not "shock the conscience" that the Department placed limits on O'Neal's associations. <u>See id.</u>

Finally, given the undisputed facts in this case, the Court does not find that Defendants' termination of O'Neal's employment was an excessive and arbitrary punishment. <u>See Lewis</u>, 523 U.S. at 845. O'Neal points to his 15 years of service at the Department, his lack of prior major

8

discipline, and argues that other co-workers were not terminated despite committing "similar or more serious" misconduct. O'Neal also argues that the Department should have used a "penalty matrix" to assure that like situated violations receive similar punishments.

While O'Neal points to prior good behavior and attempts to compare himself to other co-workers, O'Neal does not dispute that he was terminated for violating policies and rules by: initiating and maintaining a relationship with a known drug user, criminal offender and gang affiliate; giving her money; doing her favors; intercepting, copying and disclosing her mail; improperly accessing inmate records; and meeting her at his home. Given these facts, O'Neal's termination was not excessive or arbitrary. See Lebbos v. Judges of Superior Ct., 883 F.2d at 818. Therefore, the Court finds that as a matter of law, O'Neal cannot prevail on his allegation of violation of substantive due process, and ultimately O'Neal cannot prevail on his Section 1983 claim.

Based on the law and undisputed facts in this case, the Court will grant Defendants' motion for summary judgment.[3]

## ORDER

Accordingly, it is hereby ORDERED that:

1. Defendants' Motion for Summary Judgment is GRANTED;

2. All other pending dates and orders are VACATED; and

3. The Clerk shall enter judgment in favor of Defendants and CLOSE this case.

IT IS SO ORDERED.

Dated: __October 24, 2017__      _____

SENIOR  DISTRICT  JUDGE

---

[3] Because the Court has found that O'Neal has no claims against Defendants as a matter of law, the Court need not address the qualified immunity and liability issues raised by the parties. Further, Defendants argued in their motion for summary judgment that O'Neal did not have a viable claim for retaliation under the equal protection clause. In his opposition, O'Neal did not respond to Defendants' arguments or even address the equal protection clause. See Doc. No. 15. Regardless of the lack of response from O'Neal, Defendants' arguments are sound regarding the non-viability of O'Neal's equal protection claim.